IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:07cv534-RJC

| | |
|---|---|
| TRAVIS COLLUM, Guardian ad Litem for unnamed minor child, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, ALICISA JOHNSON, JIMMIE VANCE GRUBBS and RONALD DIXON, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |
| BRANTLEY OSTWALT, Guardian ad Litem for unnamed minor child, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, ALICISA JOHNSON and RONALD DIXON, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**THIS MATTER** is before the Court on "Defendant Charlotte-Mecklenburg Board of Education, Alicisa Johnson and Ronald Dixon's Motion to Dismiss Claims of Plaintiffs Brantley Ostwalt and Travis Collum" (document # 48) and "Defendant Charlotte-Mecklenburg Board of Education, Alicisa Johnson and Ronald Dixon's Memorandum in Support of Their Motion to Dismiss Claims of Plaintiffs Brantley Ostwalt and Travis Collum" (document #49) both filed September 4, 2009. Plaintiffs have not filed a brief in opposition or otherwise responded to

Defendants' Motion and the time for filing a response has expired. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss be <u>granted</u>, as discussed below.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

These actions were brought pursuant to 42 U.S.C. § 1983 and state law by Plaintiff Travis Collum, the Guardian ad Litem for an unnamed minor child ("Plaintiff Collum") and Plaintiff Brantley Ostwalt, Guardian ad Litem for unnamed minor child ("Plaintiff Ostwalt") arising out of the sexual molestation of the two minors by Defendant Jimmie Vance Grubbs[1], a former teacher at Bradley Middle School, a school in the Charlotte-Mecklenburg School system. The Defendants, after dismissal of several original Defendants, are the Charlotte-Mecklenburg Board of Education ("BOE"); Ronald Dixon, the principal of Bradley Middle School through sometime in February 2005; and Alicisa Johnson, the principal of Bradley Middle School from sometime in February 2005 (collectively "Board Defendants").

Accepting the allegations of Plaintiff Collum's Amended Complaint and Plaintiff Ostwalt's Complaint as entirely true, sometime in January or February 2005, Defendant Dixon became aware of allegations regarding inappropriate conduct with "a student" (apparently not the minor children at issue herein) by Defendant Grubbs including an incident which occurred in Myrtle Beach, South Carolina.

---

[1] Plaintiff Ostwalt did not bring any claims against Jimmie Vance Grubbs in his complaint.

Plaintiffs allege that either Defendant Dixon or Defendant Johnson, whoever was then the Principal at Bradley Middle School, informed the BOE and the CMS Law Enforcement Division about these allegations.

CMS Law Enforcement Division subsequently conducted an internal investigation. The Plaintiffs' claims arise principally from the allegation that despite being aware of Defendant Grubbs' conduct, none of Defendants reported the incidents to the Mecklenburg County Department of Social Services as they were required to do by state law or otherwise alerted parents of Bradley Middle School students of the potential danger to their children.[2] Rather than take any other action against Defendant Grubbs, Defendants allegedly decided to allow him simply to retire, which he did in May 2005. Although the Complaints do not contain the express allegation, taken in the light most favorable to the Plaintiffs, the Complaints support an inference that if Defendants had properly reported the results of their investigation, the minor children would not have been in Defendant Grubbs' presence or control on the occasions described below.

In May 2005, Defendant Grubbs paid the Collum minor, who was then a student at Bradley Middle School, to perform chores at Grubbs' house and touched the minor child inappropriately on that occasion. In the summer of 2005, Defendant Grubbs came to the Collum minor's home and entered the bathroom while the minor was in the shower. In September or October 2005, Defendant Grubbs allegedly took the minor child to Myrtle Beach, where he again touched the boy inappropriately, including on the genitals, and warned the child, who was frightened, not to inform his parents. Plaintiff Collum further alleges that sometime in late November or in December 2005, and while the minor child was at

---

[2]N.C. Gen.Stat. § 7B-301 provides that "[a]ny person ... who has cause to suspect that any juvenile is abused ... shall report the case of that juvenile to the director of the department of social services in the county where the juvenile resides or is found."

3

a church Defendant Grubbs attended, Defendant Grubbs again touched the boy's genitals and asked the boy to perform "other sexual acts," but the child refused.

In 2005 the Ostwalt minor was a student in Grubbs' class. In late December 2005 or early January 2006, Grubbs took the minor child to Columbia, South Carolina to see the University of South Carolina play basketball. Grubbs originally told the child's parents that his wife would be attending, but, at the last minute, said that she could not attend. Grubbs and the Ostwalt minor stayed overnight at a hotel. As the minor was showering, Grubbs tried to get in the shower with the minor. Later that night, Grubbs climbed into bed with the minor and touched him inappropriately.

In December 2005, a child psychologist reported to the Huntersville Police Department a sexual encounter between a different student, who was her patient, and Defendant Grubbs. The Huntersville Police Department began an investigation that led to Grubbs' arrest and subsequent guilty plea to federal charges of child molestation, including charges that were based on incidents with the Collum minor and the Ostwalt minor, resulting in a sentence of twenty years in federal prison.

On November 14, 2007, Plaintiff Collum filed his initial Complaint in the Superior Court of Mecklenburg County. On December 20, 2007, the Defendants removed the state court action to the United States District Court for the Western District of North Carolina, alleging federal question subject matter jurisdiction. On January 17, 2008, Plaintiff Collum filed an Amended Complaint. On January 30, 2008, Defendants CMS Law Enforcement Division, Gemini Insurance, Pearson, and Welborn filed a Motion to Dismiss. On June 16, 2008, Chief Judge Robert J. Conrad, Jr. granted those Defendants' Motion to Dismiss.

On May 8, 2008, Plaintiff Ostwalt filed his initial Complaint in the Superior Court of Mecklenburg County. On June 12, 2008, the Defendants removed the state court action to the United

States District Court for the Western District of North Carolina, alleging federal question subject matter jurisdiction. On September 30, 2008, Chief Judge Conrad consolidated this case with the Collum case. On October 10, 2008, Chief Judge Conrad granted a Motion to Dismiss Defendants CMS Law Enforcement Division, Gemini Insurance, Pearson, and Welborn.

On September 4, 2009, the Board Defendants filed their Motion to Dismiss the Plaintiffs' claims against them. The Board Defendants contend that Plaintiffs' tort and negligence-based claims against the BOE and Dixon and Johnson, in their official capacities, should be dismissed for lack of jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) because the BOE and its employees are protected by governmental immunity. In addition, the Board Defendants argue that each of Plaintiffs' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

The time for filing a response to the Board Defendants' Motion to Dismiss has passed, and, to date, Plaintiffs have filed no response. Accordingly, this Court considers the Defendants' Motion as fully briefed and ripe for disposition.

## II. DISCUSSION OF CLAIMS

### A. Standard of Review under Rule 12(b)(1) and Rule 12(b)(2)

Issues of sovereign immunity and governmental immunity are jurisdictional in nature. See Medina v. United States, 259 F.3d 220, 223-24 (4th Cir. 2001); Frye v. Brunswick County Bd. Of Educ., 612 F. Supp. 2d 694, 701 (E.D.N.C. 2009). While "North Carolina courts have not resolved whether the sovereign immunity defense challenges personal jurisdiction or subject-matter jurisdiction," the case law is clear that, regardless, the sovereign immunity defense is one of jurisdiction, and thus, the motion should be evaluated under the standards of both Rule 12(b)(1) and 12(b)(2). Frye, 612 F. Supp. 2d at 701

(citations omitted).

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff has the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

Under Rule 12(b)(2), Plaintiffs bear the burden of setting forth facts sufficient to demonstrate personal jurisdiction. See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993). However, when the district court considers a motion to dismiss without an evidentiary hearing, the plaintiff need only prove a prima facie case of personal jurisdiction. Id. In deciding whether plaintiff has proved a prima facie case of personal jurisdiction, the court must draw all reasonable inferences arising from the proof, and resolve all factual disputes in plaintiff's favor. Id.

### B. Doctrine of Governmental Immunity

The State and its agencies have traditionally enjoyed complete immunity from being sued in court. Smith v. State, 289 N.C. 303, 309-10, 222 S.E.2d 412, 417 (1976). With respect to governmental immunity, a county board of education is a governmental agency, and is therefore not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory

authority. Beatty v. Charlotte-Mecklenburg Bd. of Educ., 99 N.C.App. 753, 755, 394 S.E.2d 242, 244 (1990). An employee of a local board of education, sued in his or her official capacity, is entitled to governmental immunity to the same extent as the school board. Mullis v. Sechrist, 347 N.C. 548, 555, 495 S.E.2d 721, 725 (1998).

North Carolina General Statute § 115C-42 "provides the only means by which a board of education may waive its sovereign immunity." Magana v. Charlotte-Mecklenburg Bd. of Educ., 183 N.C.App. 146, 148, 645 S.E.2d 91, 92 (2007). That statute states,

> Any local board of education, by securing liability insurance as hereinafter provided, is hereby authorized and empowered to waive its governmental immunity from liability for damage by reason of death or injury to person or property caused by negligence or tort of any agent or employee of such board of education when acting within the scope of his authority or within the course of his employment. Such immunity shall be deemed to have been waived by the act of obtaining such insurance, but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort.

N.C. Gen. Stat. § 115C-42. This statute is strictly construed against finding a waiver of sovereign immunity. Hallman v. Charlotte-Mecklenburg Bd. of Educ., 124 N.C.App. 435, 438, 477 S.E.2d 179, 181 (1996). The purchase of a policy of insurance alone is not enough to waive governmental immunity. "The statute makes clear, that, unless the negligence or tort is covered by the insurance policy, sovereign immunity has not been waived by the Board or its agents." Beatty, 99 N.C.App. at 755, 394 S.E.2d at 244.

Plaintiffs assert tort and negligence claims against the Board Defendants based upon actions that occurred between January 2005 and January 2006. During this period, according to the affidavit of Daniel J. Pliszka, Manager of the Risk Management Division, which administers insurance and self-insured retention programs for the BOE, the BOE and its employees were covered under

commercial general liability insurance policies. Pliszka Aff.¶2, 5. Therefore, the question is whether the Board Defendants waived their governmental immunity by the purchase of these insurance policies.

These policies contained a Self-Insured Retention Limit of $1,000,000 and a Self-Insured Retention Endorsement which states that "[w]hen the insured's legal obligation to pay damages to which this insurance applies has been determined, and the amount of such damages is less than or equal to $1,000,000. . . , then we shall have no obligation to pay or indemnify the insured for any amount under this Policy." Pliszka Aff. ¶7, 8. In addition, the Self-Insured Retention Endorsement further states that "[w]hen the insured's legal obligation to which this insurance applies has been determined, and (1) the amount of such damages is greater than [$1,000,000]. . . , and (2) the insured has paid [$1,000,000]. . . amount to the claimant, then and only then will the insured be entitled to make claim for indemnity under this Policy. . . ." Pliszka Aff.¶9. Based on this language, the policy provides coverage for only those claims for which the Board Defendants are liable for damages in excess of $1,000,000.

The terms of the Self-Insured Retention Endorsement in the insurance policies at issue in this case are identical to the terms of the policy at issue in <u>Magana v. Charlotte-Mecklenburg Bd. of Educ.</u>, 183 N.C.App. 146, 148, 645 S.E.2d 91, 92 (2007). In <u>Magana</u>, the North Carolina Court of Appeals upheld the trial court's granting of summary judgment on the basis of governmental immunity, holding that

> Even though plaintiffs seek damages in excess of $1,000,000, the policy provides that it will not indemnify the Board unless the Board has first paid $1,000,000 to the claimant. Since the Board has statutory immunity from liability for tort claims, it cannot be required to pay any part of the $1,000,000 self-insured amount, and therefore, the excess policy will provide no indemnification. The plaintiffs have

8

argued that such a reading of the policy renders it meaningless, offering no coverage for any eventuality. We cannot agree. There are several instances where immunity is not available either because of federal or state statutes, or because of exceptions to the sovereign immunity doctrine. . .Those instances are not applicable here.

Id. at 149, 645 S.E.2d at 93.

Based on this reading of the insurance policy language, the excess liability insurance in the instant case does not apply unless and until the BOE has a legal obligation to pay the $1,000,000 self-insured amount. Because the BOE is immune from tort and negligence claims up to $1,000,000, it will never have a legal obligation to pay this self-insured amount and, thus, has not waived its immunity through the purchase of this excess liability insurance policy. Therefore, the undersigned finds that the BOE has not indemnified itself or its employees for the torts and negligence alleged by Plaintiffs and has not waived its governmental immunity pursuant to N.C. General Statute § 115C-42 through the purchase of these commercial general liability policies.

Consequently, pursuant to Rules 12(b)(1) and 12(b)(2), the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted as to Plaintiff Collum's claims for negligent infliction of emotional distress, negligent supervision and retention, negligent performance of law enforcement duties, and assault and battery against the BOE and Dixon and Johnson, in their official capacities, and as to Plaintiff Ostwalt's claims for negligent performance of law enforcement duties and negligent supervision and retention against the BOE and Dixon and Johnson, in their official capacities.

### C. Standard of Review under Rule 12(b)(6)

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs.,

Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554-55) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will

... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

### D. 42 U.S.C. § 1983 Claims Against the BOE

42 U.S.C. § 1983 allows persons whose constitutional rights have been violated by local governmental entities to sue state and local officials for redress of their grievances. See Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999). Plaintiffs allege that the BOE is liable under 42 U.S.C. § 1983 for violation of Plaintiffs' Fourteenth Amendment rights based upon the alleged "failure to properly train and instruct its employees to observe and report inappropriate sexual advances and/or conduct directed toward students by teachers[.]"

"The law is quite clear in this circuit that a section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee." Young v. City of Mount Ranier, et. al., 238 F.3d 567, 579 (4th Cir. 2001) (citing Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999)). Therefore, in order to state a claim against a supervisory entity, like the BOE, a plaintiff must first allege that an employee of the supervisory entity violated the plaintiff's constitutional rights. In the instant case, Plaintiffs have not pled any facts that would establish that any employee of the BOE actually violated Plaintiffs' constitutional rights. Therefore, Plaintiffs cannot maintain a § 1983 action against the BOE and their

claims fail as a matter of law. For the foregoing reasons, the undersigned respectfully recommends that the Board Defendants' Motion to Dismiss the § 1983 claims against the BOE be granted.

### E. Violation of North Carolina Constitution Claims Against the BOE

Plaintiffs allege that the BOE violated Plaintiffs' right to the privilege of education under the North Carolina Constitution "by fostering an environment in the schools where employees fail to report instances of inappropriate conduct by other teachers, coaches and/or staff and where conduct such as that complained of in this suit, is tolerated by the Charlotte-Mecklenburg Board of Education." However, "[n]o North Carolina appellate court has yet recognized a private right of action for damages under the North Carolina Constitution against a local board of education for the denial of the privilege of education." Frye v. Brunswick County Bd. Of Educ., 612 F. Supp.2d 694, 707 (E.D.N.C. 2009). Based on this precedent, the undersigned respectfully recommends that the Board Defendants' Motion to Dismiss the North Carolina Constitutional Claim against the BOE be granted for Plaintiffs' failure to state a claim upon which relief may be granted.

### F. Negligence-Based Claims Against Dixon and Johnson in Their Individual Capacities

Plaintiff Collum has asserted a claim of negligent infliction of emotional distress and Plaintiffs Collum and Ostwalt have asserted claims for negligent supervision and retention against Defendants Dixon and Johnson in their individual capacities. The Board Defendants argue that these claims should be dismissed because Dixon and Johnson are shielded by public official immunity.

Generally, "government officers and employees may be held personally liable for their torts." Gunter v. Anders, 114 N.C.App. 61, 66, 441 S.E.2d 167, 171 (1994). "However, when a government worker is sued in his individual capacity, North Carolina courts have distinguished between whether the worker is a public official or a public employee when assessing liability. Id.

12

> It is settled law in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. The rule in such cases is that an official may not be held liable *unless it be alleged and proved* that his act, or failure to act, was corrupt or malicious…or that he acted outside of and beyond the scope of his duties.

Id. at 67-68, 441 S.E.2d at 171 (emphasis in original).

Under North Carolina law, a school principal is a public officer, entitled to public official immunity when sued in his individual capacity. See Gunter, 114 N.C.App. at 68, 441 S.E.2d at 171 (citing Beatty, 99 N.C.App. 753, 394 S.E.2d 242 (1990)). Thus, Dixon and Johnson, who Plaintiffs allege were principals at Bradley, cannot be held personally liable on Plaintiff Collum's claim of negligent infliction of emotional distress or Plaintiffs Ostwalt and Collum's claims for negligent supervision and retention unless, at minimum, Plaintiffs have alleged that Dixon and Johnson's conduct was malicious, corrupt, or outside of and beyond the scope of their duties as principals at Bradley. See Smith v. Hefner, 235 N.C. 1, 68 S.E.2d (1952) (dismissing a wrongful death complaint against school trustees and park commissioners in their individual capacities where the plaintiff failed to allege that the defendants' conduct was corrupt or malicious or that the defendants were acting beyond the scope of their duties). It should be noted that a conclusory allegation that a public official acted maliciously, with corruption, or outside the scope of their duties is not enough to overcome their public official immunity. Farrell v. Transylvania County Bd. of Educ., 175 N.C. App. 689, 696, 625 S.E.2d 128, 134.

Applying these legal principles to Plaintiffs' allegations, Defendants Dixon and Johnson are entitled to public official immunity as to the negligence claims brought against them personally. Plaintiffs have not alleged in their Complaints that these Defendants' conduct was a product of actual

13

malice or corruption or that they acted outside the scope of their official duties. Instead, the Plaintiffs alleged that both Dixon and Johnson were "acting within the scope of his [or her] employment" at all times relevant to their Complaints.

Accordingly, the undersigned respectfully recommends the Defendants' Motion to Dismiss be granted as to Plaintiff Collum's claim of negligent infliction of emotional distress and as to Plaintiffs Ostwalt and Collum's claims for negligent supervision and retention against Defendants Dixon and Johnson in their individual capacities.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Board Defendant's "Motion to Dismiss" (document # 48) be **GRANTED** in its entirety, and that those claims be **DISMISSED WITH PREJUDICE**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins,

766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties, and to the Honorable Robert J. Conrad, Jr.

SO RECOMMENDED.

Signed: October 2, 2009

David S. Cayer
United States Magistrate Judge